## THE MOANA.

(District Court, N. D. California, First Division. October 30, 1916.)

No. 16068.

SEAMEN ⬡⟶25—CONTRACTS.

    Libelants, seamen who spoke a little English, were engaged by the assistant engineer to replace others who did not appear. They were informed that the voyage upon which they were entering was to be from San Francisco to New Zealand and return. Some days out of port they signed articles which provided only for a voyage to New Zealand, and when they reached that place they were discharged, signing a formal release to obtain their wages. They were not permitted to return as employés of the ship, because of the opposition of a sailors' union of which they were not members, and they returned on the ship as third cabin passengers. *Held* that, as the assistant was apparently authorized to engage the men, libelants were entitled to their wages for the return voyage, notwithstanding their execution of the release and signing of the articles, for under the circumstances there was practically nothing else they could do.

    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 129, 130; Dec. Dig. ⬡⟶25.]

In Admiralty. Libel by John Suarez and others, against the British steamship Moana, etc. Decree for libelants.

F. R. Wall, of San Francisco, Cal., for libelants.

Andros & Hengstler and Golden W. Bell, all of San Francisco, Cal., for respondent.

DOOLING, District Judge. Libelants, four seamen, shipped on board the British vessel Moana at San Francisco for a voyage, as they claim, from San Francisco to New Zealand and return. None of them speaks English very well, though all of them understand it to some small degree. Their claim is that before they went aboard, which was in fact just before the vessel sailed and to replace others who had been employed, but at the last moment had failed to appear, they were told by the assistant in the engineer's department, by whom they were actually employed, that the voyage upon which they were entering was to be from San Francisco to New Zealand and return, and that otherwise they would not have gone on board. Three days after leaving port they signed the ship's articles, which provided only, in so far as they were concerned, for a voyage to New Zealand; the vessel being then on the return trip of a voyage from New Zealand to San Francisco and return, and the articles being the original articles providing for such voyage. Libelants all testify that they were told at the time of signing the articles that these provided for a return trip to San Francisco. The purser, however, before whom the articles were signed, testified that it was explained to each libelant that the voyage for which they were signing would end at New Zealand. On their arrival at New Zealand libelants were discharged, and although they wanted to return on the vessel to San Francisco as employés, they were not permitted to do so, but were brought back as third-class passengers.

At New Zealand they were formally discharged before the shipping commissioner, were paid all wages due them, and signed releases accordingly.

This action is to recover the amount of wages claimed to be due them for the return trip to San Francisco, under the agreement made by them before they went on board. The only testimony before the court concerning what the engineer's assistant told them at the time he procured them to go on board shortly before the vessel sailed is the testimony of the libelants. From this and the attendant circumstances the court must find that libelants understood before they went aboard the Moana that they were shipping for a voyage from San Francisco to New Zealand and return, and under the circumstances the finding will be that such was their contract. That being so, it is not of much materiality to determine just what was done on board ship at the time of signing the articles, although I believe the libelants then understood they were signing articles for the return trip. There was, however, little else that they could then do, save to sign such articles as were presented to them. The ship in San Francisco was short-handed, and the time for her departure was near. It was necessary to have men, and the assistant engineer was apparently authorized to secure them, and did so. Under such circumstances his contract was the contract of the ship. That these seamen, speaking little English, signed off in a distant land before they could get the money then earned, does not seem to me to be a matter of much importance. They were prevented from returning as employés of the ship because of the opposition of the Sailors' Union in New Zealand, of which they were not members. The master, perhaps, did not know just what arrangement the assistant engineer had made with libelants; but, as such assistant was apparently authorized to employ the men, and did so, the ignorance of the master as to the terms of such employment cannot lessen the responsibility of the ship. Libelants were employed for a round trip from San Francisco to New Zealand and return, and are entitled to the wages prayed for.

A decree will be entered accordingly.